W. D. AARON et al., Employees of the City of Memphis,
Appellees, v. CITY OF MEMPHIS, and HENRY LOEB,
Mayor of the City of Memphis, Appellants.
—470 S.W.2d 353.

Western Section. May 25, 1971.

Certiorari Denied by Supreme Court September 7, 1971.

James M. Manire, City Attorney, and Frierson M. Graves, Jr., Assistant City Attorney, Memphis, for appellants.

Farris, Hancock & Gilman, Memphis, for appellees.

MATHERNE, J.    Chancellor Brooks McLemore, by designation of the Supreme Court of Tennessee, sat on

this case in the absence of Presiding Judge C. S. Carney, Jr.

The complainants, members of various trade unions and employees of the City of Memphis, filed suit to enjoin the City from reducing the benefits they would receive from the City pension system. The complainants insist an executive order issued by the Mayor, effective July 1, 1970, which freezes their pay rate at a certain figure if they remain in the pension system, subject to certain conditions to be hereinafter discussed, reduces their benefits under the pension system, and is violative of certain provisions of the Charter of the City of Memphis.

A temporary injunction was issued restraining the enforcement of the executive order until this lawsuit was determined. That injunction was later dissolved by an order of the Court which permitted the City of Memphis to pay into Court the difference between what the complainants insist they should receive in salary and the amount allowed by the executive order.

The Chancellor held the executive order violated the City Charter, and by order prohibited the City from changing the basis upon which the trade union employees were allowed to participate in the City pension system.

The City on appeal assigns the following errors: (1) The Court erred in holding the Charter provision violated; (2) The Court erred in holding the City must pay members of the pension system on a percentage basis in effect when the Charter was adopted; and (3) The Court erred in holding the City must pay the members of the

pension system on the percentage basis in effect upon the adoption of the Charter, or must pay all employees on one pay plan without a choice.

The facts establish the present Charter of the City of Memphis became effective on January 1, 1968, which Charter adopted the Council form of government. Section 1, paragraph 11 of the Charter provides:

> "The Council shall have no power to reduce or in any way diminish the pension benefits and other fringe benefits provided for all City employees as of the date the proposed new form of government becomes effective."

The complainants are all members of various trade unions whose wage rates are governed by contracts between their respective unions and the various associations of general contractors and subcontractors (hereinafter referred to as the AGC).

Prior to January 1, 1968, trade union employees of the City who did not desire to receive any pension or other fringe benefits were paid the full AGC rate then prevailing for their trade. At the same time, those trade union employees of the City who elected to enter the pension system and receive the fringe benefits were paid what the City calls a "maintenance rate", that rate being based upon varying percentages of the prevailing AGC rates. The percentage paid varied from 100% of the AGC rate for union employees of the Park Commission (who were members of the pension system, but received no other fringe benefits) to 95% of the AGC rate for carpenters and plumbers, to 90% for painters and operating engi-

neers, who were in the pension system and eligible for other fringe benefits.

The foregoing reduction from the full AGC rates was in addition to a 7% payroll deduction paid by all City employees who participated in the pension system. Trade union employees of the City were the only employees who were given this choice.

On February 6, 1970 the Mayor of the City of Memphis issued the executive order complained of. This Departmental Communication announced that effective July 1, 1970 every trade union employee of the City affected by the AGC agreements would receive only 80% of the prevailing AGC rates if he wanted to remain in the pension system and be entitled to other fringe benefits. Those trade union employees not desiring to so participate would be paid 100% of the prevailing AGC rate for their trade.

The communication further provided the rate of pay of the trade union employees would not be lowered to the 80% of AGC rate applicable, but the present rate of pay of each trade union employee of the city who elected to participate in the pension system and receive other fringe benefits would be frozen at its present rate until the future anticipated increase in AGC rates would result in a salary of which the present rate equaled 80%. Thereafter, the employees affected would receive the advantage of future raises based on 80% of their respective AGC rate. As of July 1, 1970, the effective date of the executive order, a pay increase had been effected under the AGC rates.

The complainants contend the enforcement of the executive order as stated would violate the Charter provision quoted in that it would effectively reduce and diminish the pension benefits and other fringe benefits these complainants enjoyed at the time the Charter was adopted.

■ The City argues the executive order was an attempt to adjust salaries of its trade union employees so that those who participated in the pension system and received fringe benefits would not be receiving a larger salary than those who do not so participate. The City argues it has the right to adjust salaries of its employees. In this respect we agree with the holding of the Chancellor wherein he stated:

"Absent contractual or other legal impediments not involved here the City has the right to fix the salaries of its employees and to reduce or increase those salaries as the City sees fit. But does the City have the right to reduce the salary of those employees who elect to continue their participation in the pension system and leave unaffected the salaries of those employees who elect to give up their right to participate in the pension system and to other fringe benefits? It would seem that such action on the part of the City is a manifest attempt to accomplish by indirection that which the Charter Amendment directly prohibits. That is, the City cannot increase the percentage cost of remaining in the pension system for such would have the effect of reducing or diminishing the pension benefits or other fringe benefits provided for all City employees.

\* \* \* \* \* \*

"It must be remembered that it is not the employees of the City of Memphis or the Courts that have brought about such restrictions on the City but it is the people through their Charter who have placed this interdiction upon their government and if such Charter provision is not in the best interest of the citizens of Memphis then it may be changed by those citizens, but not otherwise."

Pension systems are basically designed and set up on percentages of the salary of the employee, both as to the cost of the system and the benefits derived therefrom. The present plan is no exception.

The City chose, and to this date continues, to pay its trade union members a salary based upon a percentage of the AGC rate of the particular trade involved, if the employee elected to participate in the pension system and other fringe benefits. It cannot be argued but that a decision by the City to reduce that percentage if the trade union employee continued to so participate amounts to a reduction or diminishing of the benefits that employee previously enjoyed. Obviously, with no increase in the AGC rate, a cost of 20% of that rate is greater than a cost of 10% or 5% of that rate. With an increase in AGC rates, which has already occurred, the increase in cost would be greater. The greater the cost, the less the benefits.

Considering the pay off end of the pension system wherein the retired trade union employee would be drawing therefrom, it is not difficult to realize his pension payment based on a percentage of his earned salary

would be less if his salary were only 80% of the AGC rate as compared to 90% or 95% thereof.

We conclude, as did the Chancellor, the executive order implemented by the Mayor does reduce and diminish the benefits of the trade union employees who elect to stay in the pension system. To argue they can avoid this result by not participating in the pension system is to beg the question. The Charter provision quoted forbids this action and protects those employees from the consequences of having to make that decision.

■ The Chancellor decreed the City must, in compliance with the Charter provision, continue to pay trade union employees participating in the pension system and fringe benefits that percentage of the AGC rate as applied to those particular trades on January 1, 1968. The Chancellor then further decreed:

"In the alternative, the City must have only one pay plan for *all* trade union employees, without a choice of one rate of pay for members of the pension system and another rate of pay for others."

The City's third assignment of error attacks this alternative provision in the Chancellor's Decree. The City contends this alternative would force hourly employees who are under Social Security to abandon Social Security and become a member of the pension system of the City of Memphis whether or not they could fully qualify for a pension.

The City does not cite authority nor examples of situations wherein employees would be so affected. We do not

clearly understand the position of the City on this assignment of error. We do hold, however, the alternative provision as decreed by the Chancellor is not necessary to a disposition of this lawsuit.

The Chancellor had before the Court the issue of whether the City had acted illegally in implementing the executive order noted. That issue does not require a ruling as to what action the City may take in the future. To rule, on the record in the present case, that the City could institute the alternative pay plan might, or might not, result in a pay plan which would be legal and enforceable under the facts such a plan would present.

We therefore treat the above quoted portion of the Chancellor's Decree allowing the alternative pay plan as surplusage, and we strike that provision from the Decree.

It results all Assignments of Error are overruled and the Decree of the Chancellor as herein modified is affirmed. This cause is remanded to the Chancery Court of Shelby County, Tennessee for the enforcement of its decree as herein modified. The cost of this appeal is adjudged against the City of Memphis.

Nearn, J., and McLemore, Special Judge, concur.